Argued and submitted July 30, reversed and remanded October 2, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANGELA MARIE CURRIN,
*Defendant-Appellant.*

Umatilla County Circuit Court
CFH100319; A148700

311 P3d 903

Neil Francis Byl, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant appeals a judgment of conviction for one count of unlawful delivery of methamphetamine, ORS 475.890, assigning error to the trial court's denial of her motion to suppress evidence that was discovered in a plain white envelope. Defendant contends that the officer who discovered the envelope lacked probable cause to believe that it contained contraband and, thus, that its warrant-less seizure was unlawful under Article I, section 9, of the Oregon Constitution. Defendant also contends that the trial court erred by not suppressing statements that she made in response to police questioning about the envelope's contents. For the following reasons, we reverse and remand.

The pertinent facts are undisputed. Hermiston Police Officer Roberts responded to a report of a man "hanging around" at an apartment building that Roberts knew to be an area in which drug activity was "fairly common." When Roberts arrived at the building to investigate, he spotted a man matching the description that he had been given. The man was walking towards a parked pickup truck, but, upon seeing Roberts approaching, he reversed course and retreated inside the apartment building. Defendant was in the pickup truck; Roberts approached and immedi- ately recognized defendant, although he could not remember defendant's name. Roberts recalled that he had previously arrested defendant for driving under the influence of a con- trolled substance and, on a separate occasion, for posses- sion of methamphetamine. Roberts asked defendant who the man was; defendant stated that "his name is Shannon," but then stated that she thought that his name was instead "Sean or John or something like that."

Roberts left defendant sitting in the pickup truck and went to the apartment that he had seen the man enter. The man identified himself as Shannon Taylor and he and Roberts conversed for three or four minutes. Roberts then left to return to his car, but noticed that defendant was still sitting in the parked pickup truck. He ran a records check on the vehicle, which revealed that it was registered to a man with the last name Helfer; Roberts remembered

that he had previously seized methamphetamine lab components while executing a search warrant at Helfer's residence. Roberts also recalled that he had previously arrested Helfer in that same pickup truck for possession of methamphetamine. Roberts reapproached the pickup truck and asked defendant why she was still parked there. Defendant responded that she was waiting for a friend and indicated that the truck belonged to her husband. When Roberts then asked defendant if she had anything that she should not have in the vehicle, defendant replied, "I don't think so." Roberts then asked for her consent to search the vehicle; defendant declined to provide that consent. Roberts ran a records check, which revealed an outstanding warrant for defendant's arrest from Washington State. Accordingly, Roberts informed defendant that he was placing her under arrest.

Roberts opened the pickup truck door and asked defendant to step out of the vehicle. As he did so, he noticed that defendant was holding a plain, unmarked white envelope. Roberts told defendant to "[g]o ahead and put the envelope down and step out." Defendant then started to put the envelope in her purse, but suddenly, according to Roberts, after defendant had put the envelope halfway into the purse, she paused for a moment, lifted her head up, and tossed the envelope on the passenger-side floor. At the suppression hearing, Roberts testified that he had interpreted defendant's pause as a reflection of her thinking—"What do I do now?"—and that he thought defendant was trying to conceal a controlled substance from discovery during the arrest process.

Roberts placed defendant in handcuffs and then returned to the pickup truck and retrieved the envelope. Upon picking it up, Roberts immediately felt a paperfold inside; he testified that, in his experience, such a paperfold is very commonly used to contain controlled substances. Roberts read defendant her *Miranda* rights and then asked her what was inside the envelope. After initially denying that she knew, defendant stated that the envelope contained "annie," which Roberts understood to be a street term for a type of methamphetamine. Subsequent testing confirmed Roberts's understanding of the envelope's contents.

Defendant filed a motion to suppress the contents of the envelope and the statements that she made in response to Robert's questioning. The trial court denied the motion, concluding that Roberts had probable cause to believe that the envelope contained contraband prior to questioning defendant about its contents. The court thus concluded that "[t]he envelope[,] being in plain view[,] could be seized given the probable cause the officer had." Defendant timely appeals; she contends that Roberts lacked probable cause to seize the envelope and that the trial court therefore erred under Article I, section 9, of the Oregon Constitution by denying her motion.[1] The state responds that Roberts was justified in seizing the envelope because he had probable cause to believe that it contained contraband.

> "A warrantless search is lawful only if it falls within one of the few specifically established and well-delineated exceptions to the warrant requirement. Likewise, a seizure may be justified in the absence of a warrant, but only if the circumstances come within one of the exceptions to the warrant requirement."

*State v. Peterson*, 114 Or App 126, 128, 834 P2d 488, *rev dismissed*, 315 Or 272 (1992) (citations omitted). The trial court concluded that the automobile exception did not apply in this case because "[d]efendant's vehicle was immobile and so no exigency applied to search the vehicle."[2] The court also concluded that the search-incident-to-arrest exception did not apply.[3] The state does not, on appeal, attempt to justify the seizure of the envelope under either of those exceptions. Rather, the plain-view doctrine is the only ground on which the state attempts to justify the warrantless seizure.

Under the plain-view doctrine, an officer may seize an item if the officer can do so from a position where that officer is entitled to be and the incriminating character of the

---

[1] Defendant also argued, in the trial court, that the evidence should be suppressed under the Fourth Amendment to the United States Constitution. On appeal, she does not advance any federal constitutional arguments, and we therefore confine our review to questions of Oregon law.

[2] *See, e.g., State v. Smalley*, 233 Or App 263, 266-67, 225 P3d 844, *rev den*, 348 Or 415 (2010) (generally describing the requirements for that exception to apply).

[3] *See, e.g., State v. Owens*, 302 Or 196, 200-01, 729 P2d 524 (1986) (generally describing the requirements for that exception to apply).

item to be seized is "immediately apparent." *State v. Carter*, 200 Or App 262, 113 P3d 969 (2005), *aff'd*, 342 Or 39, 147 P3d 1151 (2006) (internal quotation marks omitted). In *Carter*, the Supreme Court stated that, in the context of evidence discovered in plain view during the execution of a search warrant, the plain-view doctrine "permitted the officers to seize evidence without a warrant if, in the course of executing this search warrant and while they were in a place where they had a right to be, they had probable cause to believe that evidence that they saw was either contraband or evidence of a crime." 342 Or at 45. In *State v. Owens*, 302 Or 196, 202-03, 729 P2d 524 (1986), the Supreme Court stated, in the context of a search incident to arrest, that "[w]hen an officer has probable cause to believe that an object he has lawfully discovered is contraband and, therefore, that a crime is being committed in his presence, he has the right to seize it." *See also Texas v. Brown*, 460 US 730, 740-42, 103 S Ct 1535, 75 L Ed 2d 502 (1983) (stating that, in the Fourth Amendment plain-view context, "immediately apparent" is equivalent to the probable cause standard).

Defendant does not argue—and did not argue to the trial court—that Roberts was not lawfully entitled to reach into the car to retrieve the envelope. We are therefore confined to consider two issues in this appeal: (1) Did Roberts have probable cause to believe that the envelope contained contraband or evidence of a crime at the time he seized it; and (2) if he did not, is suppression of the evidence required?

"The determination of probable cause is a legal, not a factual, conclusion. Probable cause does not require certainty." *State v. Herbert*, 302 Or 237, 241, 729 P2d 547 (1986). Instead, "[p]robable cause means a well-warranted suspicion. It requires substantially less than proof beyond a reasonable doubt, but something more than a mere possibility." *State v. Alpert*, 52 Or App 815, 821, 629 P2d 878 (1981) (citations and internal quotation marks omitted). For purposes of Article I, section 9, probable cause requires that the officer "subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure"; additionally, "[that] belief must be objectively reasonable in the circumstances." *Owens*, 302 Or at 204.

In *Herbert*, a case that the state urges is similar to the present one, the Supreme Court upheld the warrantless seizure of an opaque paperfold based on its conclusion that the officer had probable cause to believe that the paperfold contained contraband. 302 Or at 242. There, an officer was arresting a defendant on a warrant for failing to appear on a prior charge. The defendant asked to retrieve identification from his truck and, while he was ostensibly doing so, the officer noticed the defendant pull out a small paperfold from his overalls and place it on a shelf beneath the truck's glove compartment. The officer seized the paperfold and subsequently discovered a controlled substance therein. The state urged that the paperfold's seizure was valid under the doctrines of search incident to arrest and plain view. *Id.* at 240 (citing *State v. Elkins*, 245 Or 279, 422 P2d 250 (1966), and *Coolidge v. New Hampshire*, 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971)).

In upholding the legality of the paperfold's seizure, the court concluded that several facts, when considered in light of the paperfold's unique shape, gave the officer probable cause to believe that it contained contraband: (1) the defendant was under arrest and was being taken to the jail where he would be searched; (2) the defendant attempted to distract the officer while placing the paperfold; and (3) the defendant failed to look for or obtain any identification, which was the reason that he gave for returning to the truck. *Id.* at 242. Additionally, the arresting officer in *Herbert* had seen cocaine concealed in paperfolds before and had been "taught to suspect that cocaine was transported in that manner." *Id.* at 241.

Defendant, for her part, urges that this case is similar to *State v. Lavender*, 93 Or App 361, 762 P2d 1027 (1988). There, police responded to a report of a woman—the defendant—screaming in a park at approximately 1:00 a.m. After the police spoke with the defendant and began to leave, they discovered an outstanding warrant for her arrest on a drug-related offense. The officers, who, at that point, believed that the defendant was under the influence of a controlled substance, began to arrest the defendant. In response to a police request for her identification, the

defendant began looking through her purse; when one of the officers attempted to shine his light in the purse as she was doing so, the defendant quickly closed it and moved it away in an apparent effort to conceal its contents. The officers subsequently searched the purse and discovered controlled substances and related paraphernalia. On appeal from the trial court's denial of the defendant's motion to suppress that evidence, we stated the issue as "whether probable cause existed to believe that her purse contained evidence of another offense then being committed." *Id.* at 364. We concluded that probable cause did not exist, stating that

> "[m]ost importantly, the fact that defendant closed her purse and pulled it away from the officers could not support probable cause to believe that she had committed a crime. By that act, defendant exhibited her intention to protect the privacy of her purse. The assertion of a constitutionally protected right against warrantless searches cannot be a basis for such a search."

*Id.* We further concluded that the other attendant circumstances—specifically, the defendant's apparent drug intoxication—did not amount to probable cause to justify the search of the purse. *Id.*

Under the totality of the circumstances in this case, we conclude that Roberts's belief that the envelope contained contraband was not objectively reasonable, and thus, that the envelope's seizure was not supported by probable cause. Several factors support this conclusion. Foremost among them is that a plain white envelope is not similar to the sorts of containers at issue where probable cause has been found to support a warrantless seizure. In *Owens*, the officer observed a white, powdery substance in a transparent vial and a clear plastic packet in the course of arresting defendant. 302 Or at 200. The paperfold in *Herbert* measured one-inch by one-half inch, was made from a page torn out of a magazine, and was folded so that its contents would not fall out; the unique shape and character of the paperfold, which signified that it was a drug container to the arresting officer, was central to the court's conclusion that there was probable cause to search it. 302 Or at 239 n 1, 242. In *State v. Massey*, 90 Or App 95, 97, 750 P2d 1192 (1988), an officer

observed a "plastic baggie," which contained a leafy green material that the officer believed to be marijuana. The officer observed the defendant simultaneously attempt to hide the baggy and a white metal box in the crack of a car seat. We concluded that there was probable cause to seize the closed box, in large part because "[d]efendant's conduct with respect to both the baggie and the box was the same. The detective observed her attempt to hide both." *Id.* at 98. Unlike a clear vial containing a powdered substance, a small paperfold of a type known by an officer to contain drugs, or a box concealed with a bag of marijuana, a plain envelope does not tend to "announce[] the contents of the [envelope] sufficiently to give the [officer] probable cause to believe" that the envelope contains contraband. *Id.* (internal quotation marks omitted); *see also State v. Walker*, 173 Or App 46, 50, 20 P3d 834 (2001) (stating that a bubble bottle container "by its very nature, announces to the world 'I contain bubble soap,' not 'I contain drugs'").

Moreover, in light of the nature of the container at issue, the furtive movements described and relied upon by Roberts differ in important respects from those that supported the conclusion that there was probable cause to seize the paperfold in *Herbert*. Although a suspect's furtive movements may in some circumstances be considered as supporting probable cause, as in *Herbert*, and in some cases may not, as in *Lavender*, the distinction is based, in large part, on the nature of the container and the circumstances attendant to its discovery. That is, attempting to conceal a small paperfold of a sort that an officer knows to be associated with drugs while attempting to distract the officer is quite different from trying to conceal the contents of a purse that does not intrinsically suggest that it contains contraband. As with the purse in *Lavender*, the envelope in this case was not uniquely associated with drugs, for the universe of items that tends to be contained in a purse or an envelope is vastly larger than that which tends to be contained in a small paperfold. Nor did the circumstances attendant to Roberts' observation of the envelope particularly tend to suggest that it contained contraband or evidence of a crime. In fact, the only substantial evidence that Roberts had to believe that the envelope contained contraband was the fact

that defendant apparently did not want the contents of the envelope inspected.[4] Given the fact that the circumstances attendant to the officer's discovery of the envelope did not particularly tend to suggest that a crime had occurred or was ongoing, as in *Lavender*, "[t]he assertion of a constitutionally protected right against warrantless searches cannot be a basis for such a search."[5] 93 Or App at 364.

We next turn to the issue of whether suppression of the envelope's contents was required. Having placed defendant under arrest and seized the envelope, Roberts asked defendant to tell him what was in it. After defendant denied knowing the envelope's contents, Roberts told her that "you and I both know that I'm probably going to find out what's in here anyway, so why don't you just be honest about it." Defendant then told Roberts what the envelope contained. Under those circumstances, we have no trouble concluding that defendant established the existence of a "minimal factual nexus" between the unlawful seizure and the discovery of the evidence at issue. Defendant having done so, the state does not attempt to meet its burden of showing that the "evidence did not derive from the preceding illegality." *See State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005). The trial court erred by denying the motion to suppress evidence of the envelope's contents.

Defendant also asserts—as she did before the trial court—that the statements she made in response to Roberts's questions about the envelope's contents must be suppressed. We agree that defendant has established a minimum factual nexus between the unlawful seizure and the defendant's statements; as such, because the state has not

---

[4] At the suppression hearing, Roberts testified that the moment that defendant tossed the envelope on the floor of the truck was "the moment to me where I decided, '[a]ll right, there's something in this envelope that she didn't want to have found.'"

[5] The state asserts that *Lavender* is distinguishable because the defendant in that case attempted to assert a privacy right in the contents of her purse, whereas defendant here merely moved the envelope from one plainly viewed location to another. We are unable to ascribe significance to that distinction, for the envelope's *contents* were not in plain view. That is, defendant never asserted a privacy interest in the envelope's existence, but she certainly—as even the state acknowledges—evidenced the intent to avoid having its contents inspected, just as the defendant in *Lavender* did with respect to her purse.

attempted to meet its burden of showing that the statements did not derive from the preceding illegality, those statements should also have been suppressed. *See id.*; *State v. Nell*, 237 Or App 331, 340-41, 240 P3d 726 (2010) (*Miranda* warnings do not automatically attenuate a defendant's statements from a preceding unlawful seizure when the defendant is immediately confronted with the unlawfully seized evidence).

Reversed and remanded.