No. 799　　　　　November 6, 2024　　　　　55

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

DAVID JAMES,
*Defendant-Respondent.*

Washington County Circuit Court
C150903CR; A179554

Janelle F. Wipper, Judge.

Argued and submitted May 31, 2024.

Philip Thoennes, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for respondent. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Before Joyce, Presiding Judge, Lagesen, Chief Judge, and Armstrong, Senior Judge.

JOYCE, P. J.

Reversed and remanded.

**JOYCE, P. J.**

The state appeals from a pretrial order granting defendant's motions to suppress evidence that police obtained pursuant to warrants issued in 2015 and 2021. As explained below, we conclude that the trial court properly suppressed some of the evidence and erred in suppressing other evidence. Further, because we conclude that parts of the 2015 warrant were invalid, we remand to the trial court to apply the framework established in *State v. Turay*, 371 Or 128, 532 P3d 57 (2023), to determine whether a minimal factual nexus exists between the invalid parts of the warrant and the challenged evidence and if so, whether the state can establish that that evidence was untainted by the invalid parts of the warrant.

We provide a brief overview of the facts and procedural history, reserving a more detailed description about the warrants at issue (and their execution) for the discussion below. In 2015, police began investigating defendant for sexually abusing V and her older sister, M. Police obtained a warrant to search defendant's residence for various items, including computers, electronic storage devices, and digital cameras. The warrant also authorized police to search the digital devices.

Although the search did not reveal any direct evidence of abuse, as explained further below, police found a potentially incriminating note from M to defendant, as well as other evidence that tended to corroborate witness testimony. The state charged defendant with five counts of first-degree sexual abuse, two counts of first-degree sodomy, one count of using a child in a display of sexually explicit conduct, and one count of first-degree unlawful sexual penetration. The case went to trial, the state introduced, among other evidence, some of the items found pursuant to the warrant, and a jury found defendant guilty. In a prior appeal, we reversed and remanded on grounds not relevant to this appeal. *State v. James*, 302 Or App 717, 462 P3d 734 (2020).

In 2021, in light of the heightened particularity requirement announced in *State v. Mansor*, 363 Or 185, 218, 421 P3d 323 (2018), police obtained a second warrant that

authorized them to search the digital devices that the state still had in its possession after police seized them pursuant to the 2015 warrant.

Defendant filed motions to suppress all evidence obtained pursuant to both the 2015 and 2021 warrants. The trial court agreed with defendant's arguments and granted the motions to suppress, a ruling we describe in greater detail below. The state appeals, assigning error to the trial court's rulings. We review a challenge to the validity of a search warrant for legal error, *State v. Cannon*, 299 Or App 616, 625, 450 P3d 567 (2019), and we reverse in part and remand.

We turn to a more detailed recitation of the warrants and their execution. In doing so, we state the uncontroverted facts as recited in the affidavit supporting the request for the search warrant.[1] *State v. Burnham*, 287 Or App 661, 662, 403 P3d 466 (2017), *adh'd to as modified on recons*, 289 Or App 783, 412 P3d 1233 (2018). In 2015, Detective Herring applied for a search warrant to search defendant's residence and "seize, photograph and have scientifically examined" various items, including:

> "Computers and electronic storage devices which were widely commercially available and more likely than not used during the time period of approximately early 1990s to mid-2000's to include optical media, hard drive or removable storage devices.

> "Black and/or grey video camera recorder with flip viewer which [was] widely commercially available and more likely than not used during the time period of approximately early 1990s to mid-2000's to include optical media, hard drive or removable storage devices."

The affidavit also sought authorization to "photograph the interior of the residence documenting the layout of the residence and where items are located."

Herring averred that, when V was 15 years old, she disclosed that defendant had digitally penetrated and orally sodomized her multiple times when she was approximately

---

[1] We primarily focus our description of the facts and analysis on the 2015 warrant because our conclusions with respect to that warrant are ultimately dispositive as to the arguments raised concerning the 2021 warrant.

three to six years old (between 2002 and 2005). V's parents also recalled a time when V's older sister, M, told them that defendant had touched her vagina when M was approximately four years old (in 1998). V stated that the abuse occurred at defendant's house, mainly on his bed in his bedroom and once in his attic.

Herring further explained that V stated that sometimes defendant filmed the abuse with a video camera that was "grey in color with a viewing screen that flips out on the side with a black strap." M and her brother, D, also recalled seeing a video camera matching that description in defendant's house. V's mother described defendant as being "very tech savvy" with "a very elaborate computer room" in his house. D recalled seeing three monitors and two computer towers in defendant's computer room.

Herring also provided detail about statements that defendant made. Defendant said that V, M, and D would often spend time at his house watching movies and reading books with defendant. Defendant stated that at times he was alone with each child in his house. He also said that he took digital photographs of the children. Defendant stated that he used to own a "handheld black with grey" video camera but that he got rid of it, and he did not remember if he had ever used the video camera to record the children.

Defendant explained that he "always uploads his camera to his computer, every time," that he uses CDs and DVDs to back everything up, and that "he backs up his computer and photos quite regularly." He also said that "he has a lot of back[] ups from those days [and] *** has kept quite a bit of the early stuff."

Herring also included a summary of her training and experience, including her experience investigating sex crimes and computer-facilitated crimes against children and adults. Herring stated that, based on her training and experience, "somebody who collects images of child pornography is likely to store them on his computer," and "people who produce, trade, distribute, or possess images of minors engaged in sexually explicit conduct *** rarely, if ever, dispose of sexually explicit images of minors [and] [t]hey store such images

in many different formats, including * * * many forms of digital media such as hard drives, diskettes, CD-ROMs and other storage media." Herring averred that "based on conversations with Detective Michael Hanada * * * these child porn images can be stored on the computer's storage devices. Detective Hanada told me he can identify electronic devices and the approximate years of the manufacturer for purposes of seizing the correct items in this search warrant." A magistrate signed the warrant and police executed it.

Upon executing the warrant, police seized, among other items, a Seagate hard drive, a CD labeled "CASIO PHOTO BACKUP 7-7-02," and a Sony digital video camera. Police also seized a drawing of a mermaid signed by M and dated 2002, when M would have been eight years old, that said, "Dave, tell the troth, is it bad when I come here. anser soon." Police also photographed the interior of defendant's house and the locations where police had found the seized items. Forensic analysts attempted to search the Seagate hard drive but could not access it because it was heavily encrypted. On the CD, police located nonsexual photographs of V, M, and their brother, D.

Police obtained the second warrant in 2021. That warrant authorized them to search the digital devices that the state still had in its possession after police seized them pursuant to the 2015 warrant. The 2021 search of those devices yielded the same results as the 2015 search.

As noted above, defendant filed motions to suppress evidence obtained pursuant to both the 2015 and 2021 search warrants. Defendant argued that the 2015 warrant's command to search the devices lacked particularity under *Mansor. See* 363 Or at 218 (a warrant authorizing the search of digital devices "must identify, as specifically as reasonably possible in the circumstances, the information to be searched for"). Defendant also argued that the hard drive and CD were not lawfully seized because the warrant was overbroad, the Sony digital video camera fell outside the scope of the warrant, and the drawing was not lawfully seized under the plain-view exception to the warrant requirement. Defendant did not specifically address the photos of the interior of his house but argued generally

that the warrant did not establish probable cause. He also argued that the 2021 search warrant was invalid because it could not authorize a search of items unlawfully seized under the 2015 warrant.

The state conceded that the 2015 command to search the digital devices was insufficiently particular, but it argued that the 2015 warrant established probable cause to seize the hard drive and CD and to photograph defendant's house. The state also argued that the Sony digital video camera fell within the scope of the warrant and that officers lawfully seized the drawing under the plain-view doctrine. Alternatively, the state argued that officers lawfully seized the hard drive, CD, and video camera under a plain-view theory. The state further argued that, because the 2015 seizure of devices was lawful, the 2021 search warrant was also lawful.

The trial court granted defendant's motions. It accepted the state's concession that the 2015 searches of the devices were invalid. As to the seizures of the devices that the state argued were valid under the 2015 warrant, it ruled that the 2015 warrant "did not establish probable cause that evidence of a crime would be found on any particular device or the devices collectively," that "[i]tems seized pursuant to the warrant were nonresponsive," and that "[t]he evidence seized in this case does not fall under the plain view exception" because the incriminating character of the evidence is not immediately apparent. The court further concluded that because the 2015 warrant was invalid, so too was the 2021 warrant.

With the facts so framed, we turn to the state's arguments on appeal.

*Seizure of the hard drive and CD.* As it did below, on appeal the state concedes that the 2015 command to "scientifically examine" (*i.e.*, to search) the digital devices was insufficiently particular under *Mansor*. We accept that concession. But the state nevertheless challenges the trial court's conclusion that the 2015 seizure of those items was unlawful. The state argues that the facts in the affidavit, combined with Herring's training and experience, were

sufficient to establish probable cause to believe that evidence associated with the crimes of sexual abuse, sodomy, and using a child in a display of sexually explicit conduct would be found in defendant's house and that such evidence could be found on "any digital medium capable of storing photos and videos, including CDs, DVDs, or hard drives." Defendant renews his argument that the 2015 search warrant was overbroad because the affidavit did not provide probable cause to seize every digital device as outlined in the warrant.

Defendant's overbreadth argument relies on *Cannon*, where we held that, when a search warrant authorizes the seizure and search of multiple devices, the supporting affidavit must supply probable cause "for each device that a warrant authorizes to be searched." 299 Or App at 629. There, police obtained a warrant to search the defendant's car and to seize, and forensically analyze, "'any' cell phones ***, 'all' computers, including laptops, tablets, iPads, or iPods, and *** 'any and all' hard drives, gaming systems, flash drives, thumb drives, USB drives, SD cards, micro SD cards, CDs, DVDs, or any other similar devices ***." *Id.* at 619. The affidavit averred that employees at a pawn shop discovered "lewd" images of children on a laptop that the defendant had purchased from the shop, retained for about two weeks, and then sold back to the shop. *Id.* About one week before the images were discovered on the laptop, police responded to a call that the defendant was impersonating a Walmart employee and taking pictures of children in the store, possibly with a cell phone. *Id.* at 619-20. The defendant had convictions for prior sexual offenses, and his parole officer had recently arrested him for violating a condition of parole that forbade him from possessing electronic devices capable of connecting to the internet. *Id.* at 620. The defendant confessed to his parole officer that he had a Samsung smart phone in his car. *Id.* The affidavit also included a "lengthy description of habits and behaviors that, in [the officer's] training and experience, are commonly associated with individuals who possess child pornography." *Id.*

Police executed the warrant, searched the defendant's car, and seized two cell phones, a laptop, and a gaming

device. *Id.* at 621. Police searched the devices and found pornographic images of children on one of the phones. *Id.* The defendant moved to suppress the evidence, arguing that the warrant was overbroad, and the trial court granted the motion. *Id.* at 622. The state appealed, and we affirmed, holding that "probable cause must exist for each device that a warrant authorizes to be searched." *Id.* at 629.

In reaching that conclusion, we emphasized that the standard of probable cause requires not just a mere possibility that evidence would be found in a place to be searched, rather it demands that it is "more likely than not." *Id.* at 627; *see also Burnham*, 287 Or App at 666 (warrant was overbroad where, at best, the affidavit established a possibility that photos had been transmitted from the defendant's phone to other devices, but that possibility did not rise to the level of probable cause to search each of the devices authorized by the warrant). Under that standard, the warrant permitted a search broader than was supported by probable cause "because the affidavit did not provide a factual basis from which a reasonable magistrate could conclude that it was probable that evidence would be found on every CD, DVD, gaming system, thumb drive, micro-SD card, and other similar device owned or possessed by defendant." *Cannon*, 299 Or App at 633.

In certain respects, this case is distinguishable from *Cannon*. First, unlike the warrant in *Cannon*, which authorized police to seize a broad array of digital devices—cell phones, computers, tablets, thumb drives, CDs, DVDs, and gaming devices—the warrant here was somewhat narrower because it was limited to computers and electronic storage devices. Further, the warrant here included a temporal limitation and authorized the seizure only of those devices that were widely available and likely to be used between the early 1990s and mid-2000s.

Second, unlike in *Cannon*, where the only information in the affidavit about the defendant's use of devices was the defendant's connection to a laptop that contained "lewd images" and his use of a cell phone to take pictures of children at Walmart, the affidavit here contained defendant's

own statements about regularly uploading his camera to his computer and backing everything up onto CDs and DVDs.

Those differences from *Cannon*, however, do not compel a conclusion that the warrant and affidavit established probable cause for *every* computer and electronic storage device used during the 15-year timeframe. As the state notes, however, "in some cases, the information in an affidavit may give rise to probable cause to search a defined group of electronic devices, each of which may contain the evidence or contraband that is the subject of the search." *Id.* at 631 n 4; *see also State v. Villagran*, 294 Or 404, 413, 657 P2d 1223 (1983) ("The nature of 'probable cause' is not such that if it is used to support a search at one location it is necessarily exhausted as to other potential search sites. Indeed, the circumstances of a case may give rise to probable cause to search several different locations at the same time, particularly where, as here, the evidence sought may be at once in more than one location."). The question, then, is whether "computers and electronic storage devices," as enumerated in the warrant, constitute a "defined group of electronic devices" for which the affidavit established probable cause, or whether the warrant was overbroad.

In our view, the warrant's command to seize computers and electronic storage devices, including "optical media, hard drive[s] or removable storage devices" that were "widely commercially available and more likely than not used [between the] early 1990s to mid-2000's," was overbroad. The affidavit included the following information: V's and M's disclosures that defendant sexually abused them between approximately 1998 and 2005; V's statement that defendant recorded the abuse on a digital camera; defendant's statements about uploading his camera to his computer and backing data up onto CDs and DVDs (optical media); and Herring's averments about her training and experience, including that people who possess child pornography "rarely, if ever, dispose of sexually explicit images of minors." *See State v. Daniels*, 234 Or App 533, 540, 228 P3d 695, *rev den*, 349 Or 171 (2010) (determinations of probable cause involve the totality of the circumstances, including an officer's training and experience). Based on that information,

the affidavit established probable cause that evidence would be found on computers, hard drives that defendant uploaded information from his camera to, and CDs or DVDs—and only those devices that defendant possessed between 1998 and 2005.

The warrant, however, authorized police to seize devices dating back to the "early 1990s." Further, the warrant authorized police to seize not just computers, hard drives, and CDs and DVDs, but also "removable storage devices," which would include devices such as USB "thumb" drives. Moreover, the warrant did not provide any details about the types or number of computers and hard drives that defendant owned and that he would have uploaded his camera to. *Cf. Mansor*, 363 Or at 207 (warrant was valid with respect to the seizure of computers where the warrant established the grounds for believing that evidence was likely to be found on one or more of them, and the warrant identified two laptop computers and two desktop computer towers); *see Cannon*, 299 Or App at 632 (warrant was overbroad in part because "the affidavit failed to establish that defendant even owned any of the devices indicated in the warrant, other than the single Samsung cell phone").

Thus, although the facts of this case are distinguishable to an extent from *Cannon*, the warrant's authorization to seize a broad group of computers and electronic storage devices—including "removable storage devices" and devices used by defendant outside of the timeframe of the alleged abuse—lacked details such that it was not sufficiently "defined," and included items for which the affidavit did not establish probable cause. Particularly given the expansive privacy interests that are implicated by the search and seizure of digital devices, we conclude that the search category was overbroad. *See Mansor*, 363 Or at 201-02 (The large storage capacity of digital devices can "convey far more than previously possible. The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions." (Internal quotation marks and citation omitted.)). Accordingly, the trial court did not err in suppressing the hard drive and CD labeled "CASIO PHOTO BACKUP 7-7-02."

The state argues in the alternative that the police lawfully seized the hard drive and CD under the plain-view exception to the warrant requirement. "A warrantless search is lawful only if it falls within one of the few specifically established and well-delineated exceptions to the warrant requirement." *State v. Currin*, 258 Or App 715, 718, 311 P3d 903 (2013) (citation and internal quotation marks omitted). "The state bears the burden of proving that an exception to the warrant requirement existed." *State v. Carter*, 200 Or App 262, 268, 113 P3d 969 (2005), *aff'd*, 342 Or 39, 147 P3d 1151 (2006) (citation omitted). The plain-view exception "authorizes seizure of evidence under circumstances where the police are in a place where they are entitled to be when they observe the evidence in plain view and the incriminating character of the evidence is 'immediately apparent.'" *Id.* (citation omitted). Framed slightly differently, the items seized under the plain-view exception must be "obvious evidence of crime," *State v. Sagner*, 12 Or App 459, 473, 506 P2d 510, *rev den* (1973).

In the state's view, the warrant authorized the police to search defendant's residence for evidence and "[o]nce inside the house, the police had probable cause to believe that the [hard drive and CD] were subject to seizure." The trial court concluded that "[t]he evidence seized in this case does not fall under the plain view exception" because "[t]he incriminating character of the evidence [was not] 'immediately apparent.'"

We agree with the trial court. Nothing about the hard drive or CD themselves immediately announced that those particular items were incriminating. *Cf. State v. Ready*, 148 Or App 149, 156, 939 P2d 117, *rev den*, 326 Or 68 (1997) (videotape labeled "kid porn" announced its contents as contraband and was thus lawfully seized under plain-view exception). Nor were officers entitled to seize the items "to simply determine if [they were] evidence or contraband." *State v. Hoggans*, 35 Or App 669, 674, 582 P2d 466 (1978). Thus, the hard drive and CD were not lawfully seized under the plain-view exception.

*Seizure of the Sony digital video camera.* Pursuant to the 2015 search warrant command to seize a "[b]lack and/

or grey video camera recorder with flip viewer which [was] widely commercially available and more likely than not used during the time period of approximately early 1990s to mid-2000's," police seized a black and grey Sony digital video camera. At the hearing on the motion, defendant argued that the seizure of the camera was outside the scope of the warrant after presenting evidence that the video camera was not released in the United States until 2009. The state presented evidence that, although that model of camera was not released in the United States until 2009, it was released outside the United States and at least one such camera was available to purchase on Amazon in 2005. Defendant then argued that, even if the camera was available to purchase on Amazon in 2005, that does not mean that it was "widely commercially available and more likely than not used during the time period of approximately early 1990s to mid-2000's."

The trial court did not explicitly address the Sony video camera in its order granting defendant's motion to suppress but it did find that "[i]tems seized pursuant to the warrant were nonresponsive." In light of the evidence and argument presented at the hearing, we presume that the trial court found that the camera was not "widely commercially available." *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968) (holding that if findings are not made on all issues, and there is evidence from which such facts could be decided in more than one way, we will presume that the facts were decided in a manner consistent with the trial court's order). Given the evidence in the record, we conclude that the trial court was not required, as a matter of law, to find that the camera was "widely commercially available." *See id.* (explaining that we are bound by the trial court's factual findings if there is any evidence in the record to support them). Thus, the trial court did not err in ruling that the video camera fell outside the scope of the warrant.

In the alternative, the state argues, as it did below, that police lawfully seized the video camera under the plain-view exception. The trial court ruled that the video camera was not lawfully seized under the plain-view exception because the incriminating character of the camera was not immediately apparent. The state contends that the

incriminating nature of the camera was immediately apparent because it matched the description V gave of the camera. Defendant argues that the incriminating nature of the video camera was not immediately apparent because the video camera by itself is not incriminating, rather it is only the data contained on the camera that would be incriminating.

We agree with the state that the camera by itself is incriminating.[2] Whether officers lawfully seized an item under the plain-view doctrine requires us to determine whether the seizure was supported by probable cause. *State v. Wise-Welsh*, 318 Or App 146, 147-48, 506 P3d 454, *rev den*, 370 Or 198 (2022) (stating so); *see also Texas v. Brown*, 460 US 730, 740-42, 103 S Ct 1535, 75 L Ed 2d 502 (1983) (equating the "immediately apparent" standard required for plain view with probable cause for Fourth Amendment purposes). In making that determination, we evaluate whether an officer's subjective belief that an item is more likely than not contraband or evidence of a crime is objectively reasonable. *Wise-Welsh*, 318 Or App at 148. Here, the video camera matched the description given by V, and it would thus corroborate V's statements about defendant using a video camera to record some of the abuse. Thus, it was objectively reasonable for officers to believe that the video camera was evidence of the crime. Accordingly, we conclude that the police lawfully seized the video camera under the plain-view exception to the warrant requirement.[3]

*Seizure of the mermaid drawing.* Police seized the mermaid drawing under the plain-view exception to the warrant requirement. The trial court ruled that the plain-view exception did not apply because the incriminating nature of the drawing was not "immediately apparent."

---

[2] As noted above, the plain-view exception requires that officers be "in a place where they are entitled to be" when they observe the evidence. *Carter*, 200 Or App at 268. Although we have concluded that some of the commands in the warrant were invalid, the invalid search commands in the warrant do not necessarily invalidate the warrant *in toto*. *See Turay*, 371 Or at 162-63 (stating so). Unless the trial court on remand determines that the invalid portions of the warrant invalidated it in its entirety, the warrant authorized police to search defendant's house for the camera (a point that below, defendant did not contest).

[3] That the trial court found that the camera fell outside the scope of the warrant because it was not "widely commercially available" does not preclude us from concluding that officers had probable cause to seize the camera under the plain-view exception.

The state argues, as it did below, that the message on the drawing, "Dave, tell the troth. Is it bad when I come here. anser soon," indicates that M "was questioning whether it was right or wrong for her to spend time at defendant's house." Thus, in the state's view, the incriminating nature of the drawing was apparent. Defendant contends that the message on the drawing is "open to many interpretations," and thus its incriminating character was not immediately apparent.

We agree with the state. Although the drawing is open to interpretation, it was objectively reasonable for officers to believe that the drawing was evidence of the crime because it indicated that M was troubled by what was happening at defendant's house and thus the drawing tended to make a material fact—whether defendant abused her—more or less probable. OEC 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); ORS 133.535(1) ("Evidence of or information concerning the commission of a criminal offense" is subject to search and seizure.).

*Photographs of defendant's house.* Pursuant to the warrant's command to "photograph the interior of the residence documenting the layout of the residence and where items are located," police took photographs of defendant's house and locations where they found seized items. The state argues that the affidavit established probable cause to photograph the interior of defendant's house because the photographs would "tend to corroborate the descriptions provided by [V, M, and D]." Defendant argues that that search command was not supported by probable cause because, in defendant's view, the fact that the children regularly spent time at defendant's house is not in dispute, and thus "the fact that the children can describe the interior of the house in no way increases the likelihood that defendant engaged in any criminal activity." The trial court did not explicitly address the photographs in its ruling granting defendant's motion to suppress.

In our view, the proper inquiry is not whether the warrant established probable cause to photograph defendant's

house, but whether the warrant lawfully authorized police to search defendant's house. In a lawfully authorized search, documenting that search through photographs that are limited to the same vantage points as the search is not an independent "search" that requires an independent determination of probable cause. Further, it is consistent with best practices that police be required to contemporaneously document evidence and the collection of evidence through methods such as written reports and photographs. *See, e.g.*, *Principles of the Law, Policing; Documenting Evidence* § 8.02, at commentary (Am. Law Inst., Tentative Draft No. 3, April 6, 2021, approved June 2021) (police "cannot fulfill their commitment to reliability in investigations without documenting the collection of evidence * * *. Human memory is fallible * * *. Therefore evidence should be documented as contemporaneously as is possible * * * in writing and through photographs"). Here, the warrant lawfully authorized police to search defendant's house, and thus police were also authorized to photograph the interior parts of defendant's house that were searched and the locations where evidence was found.[4]

In sum, the trial court did not err in suppressing the hard drive and CD because the 2015 command to seize computers and electronic storage devices was overbroad. Consequently, the trial court also did not err in concluding that the 2021 search warrant was unlawful because, but for the unlawful 2015 seizure of the hard drive and CD, those items would not have been in the state's possession and subject to the 2021 warrant. *See State v. Johnson*, 335 Or 511, 73 P3d 282 (2003) (the state must show that, if evidence seized pursuant to a warrant is connected to some prior governmental misconduct, the warranted seizure is not tainted by that misconduct).[5] We further conclude that police lawfully seized the Sony video camera and mermaid drawing under the plain-view exception; and that the 2015 warrant

---

[4] As noted above, although the warrant included some unlawful portions, the command to seize the video camera was presumably valid such that the warrant authorized police to search defendant's house. *See* 336 Or App at 68 n 2.

[5] The state did not argue below or on appeal that, notwithstanding the unlawful seizure of the items in 2015, the 2021 search warrant was untainted by that illegality.

authorized police to take photographs of defendant's house to document the search and seizure of evidence.

Because we conclude that the 2015 warrant combined some lawful search categories with some unlawful categories, we remand to the trial court to apply the framework established in *Turay*.[6] Under that framework, the trial court must determine "whether the defendant can 'establish a minimal factual nexus between [a constitutional violation] and the challenged evidence'" and "if so, *** whether the state can 'establish that the challenged evidence was untainted by' the constitutional violation." *Turay*, 371 Or at 164 (quoting *State v. DeJong*, 368 Or 640, 642, 497 P3d 710 (2021)). Those determinations "ultimately turn[] on how the search in fact was executed." *Id.* at 163. Thus, on remand the trial court must make findings based on the factual record developed by the parties, and determine which of the challenged evidence must be suppressed. *Id.* at 168-69.

Reversed and remanded.

---

[6] The warrant at issue in *Turay* involved a search and seizure of digital evidence. However, we understand the *Turay* court's articulation of the analytical framework that Oregon courts should apply when "an evidentiary dispute involves both a warrant-based search and unlawful police conduct" to apply in equal measure to physical and digital warrants. 371 Or at 164.