No. 119 February 20, 2025 59

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROLAN HARVEY MEYERS,
*Defendant-Appellant.*

Benton County Circuit Court
20CR23093; A179042

Joan E. Demarest, Judge.

Argued and submitted October 22, 2024.

Sarah M. De La Cruz, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

Defendant appeals from a judgment convicting him of first-degree online sexual corruption of a child, second-degree online sexual corruption of a child, attempted using a child in a display of sexually explicit conduct, and luring a minor. Defendant argues that the trial court erred in (1) denying his motion to suppress evidence obtained from warranted searches of his truck and numerous electronic devices; (2) denying his motion to exclude other acts evidence; (3) denying his motion for a continuance because its ruling was based on an earlier erroneous ruling relating to alibi evidence; (4) failing to *sua sponte* strike certain statements that the prosecutor made during closing argument; (5) declining to merge the guilty verdicts on Counts 1 and 2; (6) ordering defendant to serve 30 days of jail on Count 2 consecutive to the prison sentence on Count 1; and (7) imposing compensatory fines on each count.

We conclude that the trial court correctly determined that some of the commands in the digital device warrant and the truck warrant were valid. However, we also conclude that the trial court erred in determining that the truck warrant's command to search for, seize, and forensically analyze digital devices was valid, because that command is overbroad. We further conclude that, because both warrants combined some valid commands with some invalid commands, the appropriate disposition is to remand to the trial court to apply the framework established in *State v. Turay*, 371 Or 128, 532 P3d 57 (2023) to determine which evidence, if any, must be suppressed.

If the court determines on remand that none of the evidence presented at trial had to be suppressed, it may reinstate defendant's convictions notwithstanding the partially invalid warrants. Because of that possibility, we also review each of defendant's other assignments of error.

We conclude that the trial court correctly denied defendant's motion to exclude other acts evidence because the evidence was admissible under OEC 404(4) and the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice under OEC 403; the

trial court did not abuse its discretion in denying defendant's motion for a continuance; and the trial court did not plainly err in failing to strike certain statements that the prosecutor made during closing argument. Additionally, we accept the state's concession that the trial court erred in declining to merge the guilty verdicts on Counts 1 and 2, which obviates the need to address defendant's challenge to the consecutive sentence. Finally, we accept the state's concession that the trial court erred in imposing compensatory fines on each count.

We thus reverse and remand for the court first to consider the admissibility of the evidence discovered through the warrants under the analysis set out in *Turay*. If that analysis shows that evidence was erroneously admitted, defendant is entitled to a new trial. If that analysis shows that no evidence was erroneously admitted, then the court may reinstate the judgment, except that, on Counts 1 and 2, it must enter one conviction for first-degree online sexual corruption of a child, and it must resentence defendant.

## I.  MOTION TO SUPPRESS

We state the uncontroverted facts as recited in the affidavit supporting the request for the search warrant. *State v. Burnham*, 287 Or App 661, 662, 403 P3d 466 (2017), *adh'd to as modified on recons*, 289 Or App 783, 412 P3d 1233 (2018). On April 15, 2020, Detective Duffitt received a text message on a phone number he had posted on Craigslist that was associated with the profile of a purported under-aged girl named "Morgan." Using a law enforcement database, Duffitt determined that the text message came from a phone number, "*** 3306," that was registered to defendant. Duffitt, posing as "Morgan," exchanged text messages with defendant in which defendant asked "Morgan" how old she was, asked for a picture, and sent a picture of himself in his work uniform. "Morgan" told defendant that she was 18 years old. The following day, defendant had another text conversation with "Morgan" in which she told him that she was 15 years old.

Later in that conversation defendant began sending messages to "Morgan" from a different phone number, "***

3778," that was associated with a messaging app called "text-now." In that conversation and in subsequent text exchanges with "Morgan," defendant sent photographs of himself and sexually explicit photographs of other women; repeatedly asked "Morgan" to send him sexually explicit photographs of herself; said that he had been looking for a babysitter and suggested that she babysit his kids; discussed wanting to engage in sexual activity with "Morgan," including in his car, and discussed using items such as handcuffs, rope, and lingerie.

On April 22, 2020, defendant texted "Morgan" and asked if she wanted him to "swing by," and she told him to meet her at a particular 7-Eleven. Detectives observed defendant arrive at the 7-Eleven, at which point "Morgan" texted him and asked him to meet her at a different location, the "Jackson Frazier wetlands." When defendant arrived at that location, two deputies stopped defendant, ordered him out of his truck, and arrested him. Defendant asked the officers to retrieve his lunch box and keys from his truck. In the lunch box, officers observed "several visible smart phones" in the side pocket. Officers also observed a cell phone on the passenger-side floorboard of the truck.

Officers seized two USB hard drives, one from defendant's pocket and one attached to a key ring; five cell phones from defendant's lunch box; the cell phone located on the floorboard of the truck; and two condoms and a toy bear from defendant's pocket. Duffitt averred that:

"[a]t this time, because none of the phones were searched, it is unknown which phones [defendant] was using to communicate with the [undercover] account, what device data might be stored on, or what device contains applications used for communication. It appears that [defendant] was likely using all of these devices as he brought them all with him to meet with a 15 year old girl and eventually to go to work. [Defendant's] current work phone was within the devices located in the lunch box and there was at least one of these phones that was powered on when the devices were placed into evidence. There was also a cell phone that was located on the floor of the [truck] that contained a credit card associated with [defendant]."

The affidavit also included statements from defendant's wife. In an interview with Duffitt, she told him that defendant "has only two working phones, one personal android and one work iPhone, but also has several old phones[,]" and that "[defendant] took these phones to work because of the downtime so he could transfer content between the old and new phones."

Duffitt also included a description in the affidavit of his training and experience. Duffitt described detailed information about the nature of digital devices and digital data that he knows based on his training and experience, including that "messages on textnow.com are accessed via a digital device using any web-browser or mobile application on a mobile device, such as a cellphone, or tablet. These messages are stored on the application and can access other known cellphone numbers."

Based on the information in the affidavit, Duffitt asserted that he had probable cause to believe that evidence of first- and second-degree online sexual corruption of a child, luring a minor, and attempted using a child in a display of sexually explicit conduct would be found in the eight digital devices (two USB drives and six cell phones) that officers seized at the time of defendant's arrest and in defendant's truck. A magistrate issued two warrants—one authorizing a search of the digital devices and one authorizing the search of defendant's truck.

The warrant authorizing the search of the digital devices described the six cell phones based on color, make, and model, and included six specific search categories:

"1.   Digital photographs related to the phone numbers * * * 3306 and * * * 3778 and digital images sent to [the undercover phone number].

"2.   Any and all evidence related to handcuffs, rope, vibrators, lingerie, babysitter research, daddy, daughter, and nanny.

"3.   Information regarding internet searches using search terms such as textnow.com, craigslist.com, 'sexy nude poses,' pornography, 'Morgan,' 'Jackson Frazier' and/or

[the undercover phone number] between April 15th, 2020 through April 22, 2020.

"4.   Account information that would show use or owner-ship or control of textnow.com phone number *** 3778, and cellphone number *** 3306.

"5.   Information indicative of who may have owned and/or regularly used the item(s) forensically analyzed.

"6.   Any and all evidence of location of the device itself and/or the location of the device's user as it relates to any evidence collected in subsections 1-5 above and all location information between April 15th, 2020 and April 22, 2020."

The warrant authorizing the search of the truck commanded officers to search for, seize and forensically analyze:

"A.   Digital devices – including computers, tablets, smart phones, cell phones, digital cameras, internal or periph-eral storage devices, networking devices, and other digital devices that are capable of data storage and/or processing digital information, inclusive of data contained therein or remotely accessible through the device, and the manuals, software, peripherals, cables, usernames and passwords needed to operate such items.

"B.   Notes, writings, journals, images, pictures or trophies associated with or that may have been used while engaging in the above listed crimes.

"C.   Items which would tend to show dominion and control of the property searched.

"D.   Evidence of the acquisition, concealment, and dis-posal of any fruits derived from these crimes, the fruits itself, and all property that has been used, or is possessed for the purpose of being used, to commit or conceal the com-mission of these crimes.

"E.   Lingerie, adult sex toys, handcuffs, rope, or vibrators, similar to those described in attached chat logs."

The truck warrant also directed officers to foren-sically analyze any digital devices seized pursuant to the warrant for the same six categories of digital information included in the digital device warrant.

Both warrants expressly incorporated the affidavit by reference. Upon executing the warrant to search the truck, officers seized condoms and a bottle of anal lubricant. Pursuant to the digital devices warrant, officers located incriminating evidence on the cell phone that officers had found on the floorboard of defendant's truck. That evidence included the text messages and images sent to "Morgan," including the dates that the images were taken; recent internet searches for the Jackson Frazier wetlands and 7-Eleven; internet search history showing that Duffitt's initial Craigslist posting was viewed on April 15, 2020; and evidence that defendant's email addresses were associated with the Google account on the phone and the "textnow" app.

The state charged defendant with one count of first-degree and one count of second-degree online sexual corruption of a child; attempted using a child in a display of sexually explicit conduct; and luring a minor.

Defendant moved to suppress all evidence obtained pursuant to the warrants. With respect to the digital device warrant, defendant argued that it is overbroad under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution because the affidavit did not provide probable cause that evidence would be found on each and every electronic device listed in the warrant. Defendant further argued that, with the exception of the third category, which he conceded is sufficiently particular at the suppression hearing, the warrant is insufficiently specific because the remaining search categories lack temporal limitations.

As to the truck warrant, defendant argued that it "authorizes an overbroad search for digital devices and related instrumentalities of the alleged crimes" and was insufficiently specific because it "provides no guidance nor limitation to law enforcement as to what they are permitted to search the vehicle for (beyond evidence of the named alleged offenses)."

In response, the state argued that, with respect to the digital devices warrant, the facts in the affidavit

established probable cause to search the devices and that every search category in the warrant, except for number five, is sufficiently specific.[1] As particularly relevant to our analysis below, the state argued that the fourth command, which sought "[a]ccount information that would show use or ownership or control" of the two phone numbers defendant used to contact "Morgan," is sufficiently specific because the phrase "account information" limits the search command such that it would not allow for general rummaging. The state argued that "[a]ccount information is *** information related to the particular account that directly links to the owner/user of the account[,] *** like name, address, contact information, [and] photo identification linked to the account."

As to the truck warrant, the state argued that the command to search for digital devices was supported by probable cause "given [defendant's] use of a device to communicate with ['Morgan'] while he was driving," and that the affidavit "act[ed] as a guide and limit" such that each search command in the truck warrant is sufficiently specific.

The trial court denied in part and granted in part defendant's motion to suppress. The court denied the motion to suppress "relating to the warrant authorizing [the] search of the truck." The court also denied the motion to suppress with respect to the first, third, and fourth search categories of the digital devices warrant. As to the second search category—"[a]ny and all evidence related to handcuffs, rope, vibrators, lingerie, babysitter research, daddy, daughter, and nanny"—the court granted the motion to suppress and "excised [that category] from the warrant." The court further granted the motion with respect to the fifth category—information indicative of ownership and use—and excised that category from the warrant. As to the sixth search category—"[a]ny and all evidence of location of the device itself and/or the location of the device's user as it relates to any evidence collected in subsections 1-5 above and all location

---

[1] The state conceded that the fifth search category—"[i]nformation indicative of who may have owned and/or regularly used the item(s)"—is not sufficiently particular but that that category "may be excised from the remaining warrant." *See State v. Bock (A169480)*, 310 Or App 329, 334, 485 P3d 931 (2021) (A "search command broad enough to permit the use of *any* material discovered on the cell phone relevant to establish the device owner or user's identity is impermissibly nonspecific." (Emphasis in original.)).

information between April 15th, 2020 and April 22, 2020"—the court ruled that "evidence collected pursuant to search commands 2 and 5 are excised from 'evidence collected in subsections 1-5.' Additionally, 'and all location information between April 15, 2020 and April 22, 2020 is excised.'"

On appeal, defendant challenges the parts of the court's ruling that denied his motion. We review the challenge to the validity of a search warrant for legal error. *State v. Cannon*, 299 Or App 616, 625, 450 P3d 567 (2019). A defendant bears the burden to rebut the presumption that a warranted search is valid. *State v. Walker*, 350 Or 540, 553, 258 P3d 1228 (2011).

A.  *Digital Devices Warrant*

On appeal, defendant renews his argument that the digital device warrant is overbroad and insufficiently specific under the state constitution's particularity requirement.[2] *See State v. Mansor*, 363 Or 185, 212, 421 P3d 323 (2018) (*Mansor II*) (the particularity analysis is informed by "two related, but distinct, concepts," overbreadth and specificity). We begin with defendant's overbreadth argument, in which he relies on *Cannon*, where we observed that "the gravamen of an overbreadth challenge is an 'asserted lack of probable cause'" and held that "probable cause must exist for each device that a warrant authorizes to be searched." 299 Or App at 626, 629. In defendant's view, the affidavit did not establish probable cause that evidence would be found on each device.

The state concedes that the affidavit did not provide probable cause to search the USB drives but argues that it did establish probable cause that evidence would be found on one or more of the cellphones. *See id.* at 631 n 4 ("[I]n some cases, the information in an affidavit may give rise to probable cause to search a defined group of electronic devices, each of which may contain the evidence or contraband that is the subject of the search."); *see also State v. Villagran*, 294 Or 404, 413, 657 P2d 1223 (1983) ("The nature of 'probable

---

[2] Defendant also argues on appeal that the digital device warrant is overbroad and insufficiently specific under the federal constitution "[f]or the reasons given [under the state constitutional analysis]." To the extent that we reject defendant's state constitutional arguments below, we also reject his identical Fourth Amendment arguments for the same reasons.

cause' is not such that if it is used to support a search at one location it is necessarily exhausted as to other potential search sites. Indeed, the circumstances of a case may give rise to probable cause to search several different locations at the same time, particularly where, as here, the evidence sought may be at once in more than one location.").

We accept the state's concession that the affidavit did not establish probable cause to search the USB drives.[3] We further conclude that the warrant is not overbroad with respect to the commands to search the six cell phones because the affidavit established probable cause that evidence would be found on one or more of the phones and the phones constituted a sufficiently defined group of digital devices. The affidavit included information that defendant engaged in text conversations with "Morgan," who was an undercover officer posing as a 15-year-old girl; that defendant sent sexually explicit photographs, asked for sexually explicit photographs, and expressed a desire to engage in sexual activity with "Morgan"; that defendant used two different phone numbers—including a "textnow" phone number, which can be accessed on a mobile app or web browser—to communicate with the undercover officer; that, at the time of his arrest, defendant had six cell phones in his truck and had texted with the undercover officer from his truck moments earlier; and that defendant's wife stated that defendant had two working phones but had been taking old phones with him to work so that he could transfer content between the phones during his downtime.

Those facts establish probable cause to believe that evidence would be found on one or more of the cell phones—a defined group of devices that was limited to the six phones that were in defendant's truck while defendant was texting with the undercover officer and that were specifically described in the search warrant. *See Mansor II*, 363 Or at 207 (warrant was valid with respect to the seizure of computers where the affidavit established the grounds for believing that evidence was likely to be found on one or more of them, and the warrant identified two laptop computers and two desktop computer towers); *cf. State v. James*, 336 Or App 55,

---

[3] Officers did not find any incriminating evidence on the USB drives.

65, 560 P3d 747 (2024) (warrant that authorized seizure of computers and electronic storage devices and "did not provide any details about the types or number of computers and hard drives that defendant owned and that he would have uploaded his camera to" was overbroad).

We turn to defendant's argument that the digital device warrant is insufficiently specific. To meet the particularity requirement of Article I, section 9, a warrant authorizing the search of digital devices "must identify, as specifically as reasonably possible in the circumstances, the information to be searched for, including, if relevant and available, the time period during which that information was created, accessed, or otherwise used." *Mansor II*, 363 Or at 218.

Because defendant conceded below that the third category is sufficiently specific, and the state does not challenge the court's ruling that the second and fifth categories are insufficiently specific, the only categories at issue are the first, fourth, and sixth (as modified by the trial court). We begin with the first and fourth categories:

"1.   Digital photographs related to the phone numbers * * * 3306 and * * * 3778 and digital images sent to [the undercover phone number].

"4.   Account information that would show use or ownership or control of textnow.com phone number * * * 3778, and cellphone number * * * 3306."

Defendant argues that those categories are insufficiently specific because "they do not limit the time frame to the dates of the text message conversation in this case." We acknowledge that *Mansor II* imposed heightened specificity requirements for warrants authorizing the search for digital information on a defendant's digital devices including, "if relevant and available, the time period during which that information was created, accessed, or otherwise used." *Id.* In *Turay*, 371 Or at 147-48, however, the court rejected "a categorical requirement that a warrant to search for digital data incorporate *all* known and pertinent details." (Emphasis in original.) The court explained that that approach "would run counter to the entire foundation of Article I, section 9— which * * * is grounded in reasonableness." *Id.*; *see also*

*Mansor II*, 363 Or at 206-07 ("The privacy interests protected from *unreasonable* searches under Article I, section 9, are defined by an objective test of whether the government's conduct would significantly impair an individual's interest in freedom from scrutiny, *i.e.*, [their] privacy." (Emphasis added; internal quotation marks and citation omitted.)).

Thus, the standard announced in *Mansor II*, as clarified in *Turay*, is governed by a standard of reasonableness, and requires warrants that authorize a search for digital information on a defendant's digital devices to "identify, as specifically as reasonably possible in the circumstances, the information to be searched for, *** and the description must permit law enforcement, exercising reasonable effort, to identify the information sought with a reasonable degree of certainty." *Turay*, 371 Or at 149-50 (internal quotation marks and citation omitted).

Under that standard, we conclude that the trial court correctly determined that the first and fourth search categories satisfy the particularity requirement. Although those categories did not include a temporal limitation, they did include specific limitations that would permit officers, "exercising reasonable effort, to identify the information sought with a reasonable degree of certainty." *Id.* The first category—photographs and images sent to the undercover phone number from the 3306 and 3778 phone numbers—limited the search to only the communications between the relevant phone numbers and thus effectively limited the search to the relevant timeframe because the communications involving the undercover phone number only occurred between April 15 and April 22.[4]

The fourth category—account information that would show use or ownership or control of the 3778 and 3306 phone numbers—is also sufficiently specific notwithstanding the absence of a temporal limitation. The description was sufficiently specific because it was limited to a specific type of information—account information—and it was

---

[4] We note that defendant argued below and on appeal that the first category was insufficiently particular only because it lacked a temporal limitation and did not challenge the state's interpretation that the category limited the search to communications between defendant's two phone numbers and the undercover phone number.

limited to two specific phone numbers. As the state argued below, "account information" is "information related to the particular account that directly links to the owner/user of the account[,] *** like name, address, contact information, [and] photo identification linked to the account." Within those parameters, an executing officer would know what to look for with a reasonable degree of certainty without being required to use discretion in deciding what to search for or seize or to "rummage freely" throughout the device. *Cf. State v. Bock (A169480)*, 310 Or App 329, 334-35, 485 P3d 931 (2021) (command to search for "[a]ny evidence identifying the owner/user of the device" violated the particularity requirement because the warrant "require[d] the executing officer to employ discretion in deciding what to search or seize ***. [T]he officer performing the search has the discretion to rummage freely throughout the device and seize nearly everything[.]"). Indeed, defendant does not explain how including a temporal limitation would serve to identify with greater specificity the "what" that is being searched for. *See Mansor II*, 363 Or at 218 ("'[T]emporal limitations' are more accurately seen as a way of identifying with greater specificity the 'what' that is being searched for, rather than as a separate, independently required element, in meeting the particularity requirement for a computer search.").

As to the sixth category—"[a]ny and all evidence of location of the device itself and/or the location of the device's user as it relates to any evidence collected in subsections 1-5 above and all location information between April 15th, 2020, and April 22, 2020"—the trial court modified it to exclude evidence discovered pursuant to search categories two and five and evidence discovered pursuant to the command to search for "all location information between April 15, 2020, and April 22, 2020." Defendant argues that the modified search category "is not specific because it relies on other non-specific search commands" and "authorizes police to rummage through all the devices." As explained above, however, the first and fourth search categories are sufficiently specific, and defendant conceded below that the third category is sufficiently specific. Further, the sixth category's command to search for location information—as circumscribed by the limitations included in those categories, such as specific phone

numbers, dates, and types of information—is sufficiently specific and does not authorize "undue rummaging." *See Mansor II*, 363 Or at 220 (without specificity, digital searches "raise the possibility of computer search warrants \*\*\* sanctioning the undue rummaging that the particularity requirement was enacted to preclude" (internal quotation marks omitted)); *cf. Turay*, 371 Or at 154 (command to search for any evidence of the location of the defendant's cell phone during a 12-week period was insufficiently particular because it did not include limiting factors known to law enforcement such as the nature of the activity being investigated).

B.  *Truck Warrant*

Turning to the truck warrant, on appeal defendant renews his arguments that one command—the warrant's command to search for, seize, and forensically analyze digital devices—is overbroad and that all of the search commands are insufficiently specific. We agree with defendant that, under *Cannon*, the truck warrant's command to search for, seize, and forensically analyze a broad array of digital devices is overbroad. Unlike the digital device warrant, which specified six cell phones, the truck warrant directed officers to search for, seize and forensically analyze digital devices, "including computers, tablets, smart phones, cell phones, digital cameras, internal or peripheral storage devices, networking devices, and other digital devices that are capable of data storage and/or processing digital information, inclusive of data contained therein or remotely accessible through the device[.]"

As discussed above, the affidavit included information that defendant sent texts and pictures to "Morgan," including from his truck on the day of his arrest, and that defendant possessed six cell phones in his truck at the time of his arrest. Those facts established probable cause that evidence would be found on one or more of the six identified cell phones. The affidavit did not include any information, however, relating to defendant's possession of additional digital devices or information about defendant's use of digital cameras, peripheral storage devices, or networking devices, let alone reason to forensically analyze any such devices if they were found. Thus, we conclude that the affidavit did

not give rise to probable cause to search defendant's truck for the broad array of digital devices as enumerated in the warrant. *See Cannon*, 299 Or App at 632 (warrant was overbroad in part because "the affidavit failed to establish that defendant even owned any of the devices indicated in the warrant, other than the single Samsung cell phone").

Next, we address defendant's argument that the warrant is insufficiently specific. Our conclusion that the command to search for digital devices is overbroad obviates the need to address whether that particular command is sufficiently specific. With respect to the remaining search categories, we conclude that they are sufficiently specific.

At the outset, we note that defendant argues only that those commands lack specificity and does not argue that they are overbroad because they are unsupported by probable cause. As we have previously observed, overbreadth and specificity are "analytically distinct" concepts that have "independent significance." *State v. Mansor*, 279 Or App 778, 792-93, 381 P3d 930 (2016) (*Mansor I*), *aff'd*, 363 Or 185, 421 P3d 323 (2018) (a warrant can, for example, "precisely and unambiguously identify items to be forensically examined, satisfying the specificity concern, but nevertheless be invalid as overbroad if there is no probable cause to examine some of those items").

Thus, in light of defendant's narrow specificity argument, we only determine whether the warrant sufficiently described the items to be seized such that officers could "with reasonable effort ascertain those items to a reasonable degree of certainty." *Mansor II*, 363 Or at 212 (internal quotation marks omitted). Here, the warrant identified the place to be searched—defendant's truck—and the things to be searched for and seized—evidence such as writings, fruits derived from, and property used to commit the crimes of first and second-degree online sexual corruption of a child, luring a minor, and attempted using a child in display of sexually explicit conduct.[5] Although terms such

_____

[5] *See* ORS 163.432(1) (a person commits the crime of second-degree online sexual corruption of a child if "[f]or the purpose of arousing or gratifying the sexual desire of the person or another person, [they] knowingly use[] an online communication to solicit a child to engage in sexual contact or sexually explicit conduct" and they offer or agree to physically meet with the child); ORS 163.433(1)

as "fruits" of a crime and "property used to commit a crime" could be more specific, when read in connection with the crimes under investigation in this case, those terms are sufficiently specific. *See State v. Rose*, 264 Or App 95, 107, 330 P3d 680, *rev den*, 356 Or 400 (2014) (the "degree of specificity required * * * depends on the circumstances and the nature of the property to be seized").

In sum, we conclude that the trial court correctly denied defendant's motion to suppress with respect to certain categories of the digital device warrant because that warrant is not overbroad and the first, third, fourth, and sixth (as modified) categories are sufficiently specific. We further conclude that the trial court erred in denying defendant's motion to suppress with respect to the truck warrant's command to search for digital devices because that command is overbroad.

Because both warrants combined some valid commands with some invalid commands, and the parties did not have the opportunity below to develop a factual record under the appropriate legal standard, we remand to the trial court to apply the framework established in *Turay*. 371 Or at 169. Under that framework, the invalid commands "establish that all the challenged evidence is presumptively a product of the constitutional violation as to particularity," and the trial court must determine whether the state can establish that that evidence was untainted by the violation. *Id.*

## II.   OTHER ACTS EVIDENCE

In his second assignment of error, defendant argues that the trial court erred in denying his motion to exclude other acts evidence. Defendant moved *in limine* to exclude certain text messages, including: "I've tied others up" and

---

(a person commits the crime of first-degree online sexual corruption of a child if they violate ORS 163.432 and "intentionally take[] a substantial step toward physically meeting with or encountering the child"); ORS 167.057(1) (a person commits the crime of luring a minor if the person "[f]urnishes to, or uses with, a minor, a police officer posing as a minor or an agent of a police officer posing as a minor, a visual representation or explicit verbal description or narrative account of sexual conduct for the purpose of inducing the minor or purported minor to engage in sexual conduct"); ORS 163.670(1) (a person commits the crime of using a child in a display of sexually explicit conduct if the person "[e]mploys, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a visual recording").

"Not as young as you, it takes being gentle, special care and attention to teach someone."[6] Defendant sent those text messages to "Morgan" during a conversation in which defendant asked "Morgan" if she had "ever wanted to be tied [to] a bed," suggested engaging in sexual conduct with "Morgan," repeatedly asked her to send him sexually explicit photos of herself, told her he could send "pose examples," and sent sexually explicit photos of women, including photos of women tied up.

Defendant argued that, under OEC 404(3), the statements are inadmissible character evidence. OEC 404(3) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."). Defendant further argued that the probative value of the statements would be substantially outweighed by the risk of unfair prejudice. OEC 403 (relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"). The state argued that the statements are relevant for a nonpropensity purpose to establish defendant's motive and intent because the statements show that defendant was attempting to normalize sexually explicit conduct in an effort to induce the minor child to send sexually explicit photos and engage in sexual conduct with defendant.

The trial court denied defendant's motion after determining that "the State is offering [the statements] to prove intent and motive" and that "the probative value of the prior acts do substantially outweigh any danger of unfair prejudice." On appeal, defendant challenges that ruling, reprising his arguments below.[7]

---

[6] Defendant also moved to exclude two other text messages, but the trial court determined that those messages were not other acts evidence. Defendant does not challenge that ruling on appeal.

[7] Defendant also argues that "[t]he trial court's error *** deprived defendant of a fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution" because "defendant's trial did not proceed according to the established rules of evidence." Defendant did not preserve that argument below. Accordingly, we do not address it. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) ("Generally, an issue not preserved in the trial court will not be considered on appeal.").

We review a trial court's ruling admitting other acts evidence for errors of law. *State v. Baughman*, 361 Or 386, 406, 393 P3d 1132 (2017). We review a trial court's determination as to whether evidence is unfairly prejudicial under OEC 403 for abuse of discretion. *State v. Levasseur*, 309 Or App 745, 747, 483 P3d 1167, *adh'd to as clarified on recons*, 312 Or App 733, 489 P3d 630 (2021).

We begin by noting that "in criminal trials in Oregon, the applicable subsection of OEC 404 that applies to acts of a defendant offered in a criminal trial is OEC 404(4), not OEC 404(3)." *State v. Davis*, 372 Or 618, 633, 553 P3d 1017 (2024). OEC 404(4) provides that other acts evidence is admissible if it is relevant, if its admission is not barred by the Oregon or United States constitutions, and if it "withstand[s] OEC 403 balancing to determine whether its probative value is substantially outweighed by its prejudicial effect." *Id.* at 634-35. Unlike OEC 404(3), "OEC 404(4) *** does not require the state to prove to the court that other acts evidence is offered for a purpose other than to prove character or that the relevance of that evidence does not rely on propensity reasoning." *Id.* at 633.

However, "[e]ven though OEC 404(3) is no longer technically controlling of other acts of a defendant in a criminal trial, considering how the proffered evidence would have fared under that rule 'will have a significant effect on whether the trial court admits that evidence' under the balancing required by OEC 403." *Id.* at 635 (quoting *Baughman*, 361 Or at 405). Other acts evidence that is relevant for a nonpropensity purpose under OEC 404(3) "generally will be admissible under OEC 403," whereas when evidence is relevant only to prove a defendant's character, "generally, the danger of unfair prejudice will substantially outweigh the probative value of the evidence." *Baughman*, 361 Or at 405.

With that framework in mind, we conclude that the trial court correctly determined that the texts were relevant for the nonpropensity purpose of establishing defendant's intent because the state's theory of relevance did not employ propensity reasoning. *See State v. Terry*, 309 Or App 459, 464, 482 P3d 105 (2021) (A theory of relevance uses propensity reasoning when it "invites the factfinder to infer 'that a

person has a propensity to engage in certain types of behavior and that [he] acted in conformance with that propensity on a particular occasion.'" (Quoting *State v. Skillicorn*, 367 Or 464, 476, 479 P3d 254 (2021).)).

Here, the state did not argue that because defendant has "tied others up" and engaged in sexual conduct with someone "not as young" as "Morgan," he has a propensity to engage in that conduct and that he acted on that propensity during the charged conduct. Rather, the state's theory was that defendant told "Morgan" about the other acts because he wanted to normalize sexually explicit conduct and reassure "Morgan" to induce her to send him sexually explicit photos of herself and to engage in sexual conduct with defendant. Under that theory, the texts are probative of defendant's intent notwithstanding whether defendant even committed the "other acts," and the theory does not rely on propensity-based reasoning.

We further conclude that the trial court did not abuse its discretion in admitting the texts under OEC 403—a rule that "favors admissibility." *Davis*, 372 Or at 641. Although the texts are somewhat inflammatory and might suggest an emotional basis for the jury to convict defendant, their relevance, as explained above, derives solely from a noncharacter purpose. *State v. Lyons*, 324 Or 256, 280, 924 P2d 802 (1996) (defining "unfair prejudice" as "an undue tendency to suggest a decision on an improper basis, commonly, although not always, an emotional one"). Under those circumstances, the risk of unfair prejudice did not substantially outweigh the probative value of the texts, and thus admission of the texts was among the "legally permissible outcomes." *See Davis*, 372 Or at 641-42 (concluding that, where "the primary or substantial value of the [evidence] was not derived from character, or character-based propensity reasoning, declining to exclude the evidence under OEC 403 was within the permissible range of the trial court's discretion").

## III.   MOTION TO CONTINUE

In defendant's third and fourth assignments of error, he argues that the trial court erred when it ruled that certain evidence was alibi evidence and denied defendant's

motion for a continuance. Although defendant separately assigns error to those two rulings, he combines the argument, contending that the trial court "denied defendant's motion for a continuance based on its erroneous ruling that defendant presented alibi evidence without adequate notice to the state." *See Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 117, 376 P3d 960 (2016) ("[A] trial court may abuse its discretion if its decision is based on predicate legal conclusions that are erroneous * * *.").

As explained below, we disagree with defendant that the trial court based its denial of the motion to continue on its earlier ruling that the evidence was alibi evidence. We further conclude that the trial court did not abuse its discretion in denying defendant's motion to continue. *State v. Ferraro*, 264 Or App 271, 280, 331 P3d 1086 (2014) (we review a trial court's denial of a continuance for abuse of discretion).

During defendant's opening statement, which he gave after the state rested its case-in-chief, defense counsel told the jury that it was defendant's half-brother, Lindemann, who sent the text messages to the undercover phone number, not defendant. The state objected, arguing that defendant was presenting an alibi defense without providing adequate notice to the state and thus the court should exclude the evidence. ORS 135.455(1) (requiring the defendant to notify the state not less than five days before trial if the defendant intends to rely on alibi evidence). The state also proposed a "middle ground" and asked the court for a continuance so that it could investigate the alibi. Defense counsel argued that it was not alibi evidence but if the court ruled that it was alibi evidence, "we would join in a motion to continue as opposed to a mistrial."

The court ruled that the testimony was alibi evidence but allowed defendant to call Lindemann as a witness and present the evidence. After Lindemann testified on direct examination, the state requested a continuance of approximately two weeks. Defendant argued that "had notice been given [of the alibi defense], there would be five days in which to act on that information, and so * * * the length of [the] set-over [should] be no greater than that." The court continued the trial for one week.

When the trial resumed, defendant moved for a continuance of "roughly a week or ten days" to allow time for an IT expert to examine the "nearly 350 pages of new materials" that he had received from the state "within the past 24 hours." That material was primarily evidence of phone calls made by defendant during the timeframe when defendant was texting with "Morgan." Defendant argued that he "need[ed] to confirm, by looking at the data within the phone, whether those calls were actually made from the phone *** [b]ecause there are other means in which to do that, such as internet-based applications."

The state objected, noting that defendant "had the same amount of time with the same information available" to investigate the evidence and that evidence from defendant's phone had been available to defendant since the beginning of the case. The trial court asked defendant if he needed an expert "to look at the data from the phone" and whether that data had been previously provided to defendant. Defendant confirmed that the data had been provided previously but argued that "until this information was provided to us yesterday, it had not been apparent that an expert was really needed to view that information."

The trial court denied the motion to continue, explaining that defendant "opened a can of worms" when he offered the alibi evidence and the "State used its resources to answer the questions that were created by your can of worms," and that "this is all information that either was available prior to trial, as this case has been pending for two years, or it's information that was obtained as a direct result of the testimony of your alibi witness." The trial court further explained to defendant, "You also had the last week, just like the State did, to gather evidence, to dot your i's and cross your t's[.]"

As demonstrated by those statements, the trial court's reasoning did not rest on the fact that defendant's defense was an alibi. Rather, the court reasoned that defendant had had the same opportunity as the state to investigate the evidence related to his defense and that nothing that the state uncovered should have been a surprise to defendant. And we conclude that the trial court's ruling on that basis was "within the range of legally correct choices."

*Ferraro*, 264 Or App at 281 (internal quotation marks omitted). The cell phone data had already been provided to defendant, and in anticipation of the state's investigation of the cell phone data after defendant presented his defense, defendant could have investigated that data for evidence relating to his defense during the continuance that the trial court granted to the state. Under those circumstances, the court did not abuse its discretion. *See State v. Snyder*, 330 Or App 477, 478, 543 P3d 749, *rev den*, 372 Or 437 (2024) (trial court did not abuse its discretion in denying the defendant's motion to continue to investigate discovery produced five days before trial, where the defendant "had reason and an opportunity to do the investigation that he sought to do long before trial" and "the additional material should not have come as a surprise" to him).[8]

## IV. PROSECUTORIAL STATEMENTS DURING CLOSING ARGUMENTS

In his fifth and sixth assignments of error, defendant challenges statements that the prosecutor made during rebuttal closing arguments. In discussing photographs that defendant had sent to the victim, the prosecutor attacked defendant's explanation for the photographs, including that they were photographs that he had sent to his wife. The prosecutor said "It's just more creepy that he used what he sent to his wife. * * * There is no sacred thing for he and his wife and he's using those photos." The prosecutor made a second comment about there being "nothing sacred between he and his wife." Defendant did not object to those statements but argues on appeal that they were plainly erroneous because they "improperly appealed to the jurors' feelings about marriage and sympathy for [defendant's] wife." As the Supreme Court recently explained, when a defendant seeks appellate reversal based on an improper argument by the prosecutor to which no objection was made at trial, "it is not enough for [the] defendant to show that [the] prosecutor's comments were improper[.]" *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022). Rather, the improper argument warrants reversal *only* when "it is beyond dispute that the prosecutor's

---

[8] That conclusion obviates the need to address whether the court erred in ruling that the evidence was alibi evidence.

comments were so prejudicial as to have denied defendant a fair trial." *Id.* (internal quotation marks omitted). "[P]rosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) (emphasis in original).

In this case, even assuming that the prosecutor's comments were improper, they did not deny defendant a fair trial. The comments were not egregious, the prosecutor did not misstate the law, improperly shift the burden of persuasion to defendant, or otherwise invite the jury to draw an adverse inference from defendant's exercise of a constitutional right. In that way, this case is unlike those in which we have concluded that improper comments denied the defendant a fair trial. *See, e.g.*, *State v. Soprych*, 318 Or App 306, 311-12, 507 P3d 276 (2022) (the defendant was deprived of a fair trial where the prosecutor undermined the presumption of innocence and conditioned the jury to believe that the defendant was obviously guilty). We therefore reject defendant's claims of error.

## V.   MERGER

In his seventh assignment of error, defendant contends that the trial court erred in failing to merge the verdict on Count 2, second-degree online sexual corruption of a child, with the verdict on Count 1, first-degree online sexual corruption of a child. ORS 161.067 requires statutory violations that are based on the same conduct or criminal episode to merge unless the factors in ORS 161.067 are present:

"(1)   When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

"* * * * *

"(3)   When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there

are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

During sentencing, the state agreed that Counts 1 and 2 would merge under subsection (1) but argued that under subsection (3), the court should not merge the verdicts because there was a "sufficient pause" between the two incidents. *See State v. West-Howell*, 282 Or App 393, 398, 385 P3d 1121 (2016), *rev den*, 361 Or 312 (2017) (to enter multiple convictions under ORS 161.067(3), "one crime must end before another begins *and* each crime must be separated from the others by a sufficient pause in the defendant's criminal conduct to afford him an opportunity to renounce his criminal intent" (emphasis in original)).

Defendant disputed, as he does now on appeal, whether the state proved a sufficient pause. At trial, the state presented evidence of text messages occurring between April 15 and April 22, including offers to meet with "Morgan" on April 16 and April 22. Rather than electing which offer to meet formed the basis for each count, the state requested, and the trial court gave, jury instructions that all jurors must concur on the specific factual occurrence that constituted each crime, and the parties agreed that those instructions were sufficient to ensure that all jurors concurred on a particular factual occurrence and that there was no need to modify the verdict form. In defendant's view, neither the charging instrument nor the verdict reflect what conduct committed on which dates formed the basis for the convictions on Counts 1 and 2, and the trial court accordingly could not make the necessary finding under ORS 161.067(3).

On appeal, the state concedes the error. We agree and accept the state's concession.[9] *See State v. Avila*, 283 Or App 262, 269, 388 P3d 383 (2016) (first-degree sexual abuse convictions for touching of separate body parts merge where the state fails to adduce evidence to show that the acts were

---

[9] That conclusion obviates the need to reach defendant's eighth assignment of error challenging the consecutive sentences on Counts 1 and 2.

separated by a sufficient pause); *see also State v. Nelson*, 282 Or App 427, 444-47, 386 P3d 73 (2016) (ORS 161.067(3) does not prevent merger of multiple counts of sexual abuse that involve touching separate parts of a victim's body.). If, after conducting the *Turay* analysis, the trial court concludes that a new trial is unnecessary, it must enter a judgment of conviction reflecting a single conviction for first-degree online sexual corruption of a child. In that event, it must also resentence defendant. *See State v. Garcia*, 313 Or App 731, 732, 494 P3d 1043 (2021) (accepting the state's concession on merger and providing for that remedy).

## VI.  COMPENSATORY FINES

In assignments of error nine through 12, defendant argues that the trial court plainly erred in imposing compensatory fines on each count to be paid to the National Center for Missing and Exploited Children (NCMEC) because the NCMEC was not a qualifying "victim" under the statutes governing compensatory fines. *See State v. Moreno-Hernandez*, 365 Or 175, 181-83, 189, 442 P3d 1092 (2019) (concluding that under ORS 137.101(1), the court may only impose a compensatory fine payable to a "victim" that has suffered "economic damages" as defined in ORS 31.710).

The state concedes that the trial court plainly erred, and we agree. However, there is no need for us to correct the error now, because, if the court reinstates defendant's convictions, it will conduct resentencing at that time.

Reversed and remanded.